[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff brings this suit contending that defendant, pursuant to their CT Page 12989 agreement, owes her the sum of $5,604.94 for day care provided her children during the period September 1997, through mid June 1998. of that sum, plaintiff claims $890.00 represents the total of late charges assessed against defendant, at the rate of $5.00 for each time she picked up one of her children from plaintiff's care after 5:15 p.m. and $4,714.94 represents defendant's co-pay, (the difference between the amount billed for day care services by the plaintiff and the amount paid by the Child Care Assistance Program, CCAP). It is undisputed that Child Care Assistance Program administered by Maximus, Inc. under a contract funded by the Connecticut Department of Social Services paid most if not all of the costs of child day care for the defendant.
In opposition, defendant maintains that she never agreed to be responsible for or to pay any part of the co-pay that plaintiff claims is due and owing, and that plaintiff has been overpaid by CCAP and therefore is owed little or nothing. Further, defendant contends that if late charges are owed, they are minimal because they were only to be charged if her children were picked up from plaintiff's care after 5:45 p.m. And that rarely, if ever, happened.
In addition to denying the gravamen of plaintiff's claim, defendant, by way of cross-complaint, seeks money damages from the plaintiff claiming:
1. That without her knowledge or permission plaintiff altered their contract to support her claims against defendant, after the contract had been signed;
2. That plaintiff failed, after demand, to return certain of defendant's personalty valued at approximately $2,000.00; and
3. That without permission, plaintiff gave two of defendant's children haircuts that had to be recut at a cost to defendant of $17.90. In response, plaintiff denied the allegations and issued was joined.
The parties and their witnesses were heard at trial to the court over a three day period. Because the pro se appearing defendant is not an attorney, it bears saying that the plaintiff has the burden of proving the material and essential elements of her complaint by a fair preponderance of the evidence, if they are to be proved at all, and that the defendant has a similar burden with regard to the material and essential elements of her cross complaint.
To prove by a fair preponderance of the evidence means to prove that something is more likely so then not so. This is not necessarily determined by the number of witnesses produced by a party, rather, it means that the evidence on behalf of the party on whom the burden rests CT Page 12990 must have the greater weight. If the evidence on both sides of an issue is evenly balanced, then there is no preponderance of the evidence and, therefore, the party having the burden of proving the issue has failed to prove same.
It is clear from the outset that the only issue in this case is credibility and just as clear is the fact that both plaintiff and defendant, at times were evasive and less than candid.
From a fair preponderance of the credible evidence, the court finds the following:
On or about September 2, 1997, the plaintiff's services were retained by the defendant to provide day care for defendant's four children, Noel Cromb, Jr., Brandon Cromb, Heaven Mucci and Vincent Mucci, Jr. at the defendant's home. Thereafter, on October 20, 1997, the defendant's daughter, Autumn Mucci, was born and on December 1, 1997, the plaintiff's services were retained to provide her day care commencing January 2, 1998.
On or about December 24, 1997, the plaintiff became a state licensed day care provider and at her request, on January 5, 1998, she and defendant entered into a written agreement pursuant to which plaintiff was to provide day care services for defendant's five children in plaintiff's home day care. Among other things, this agreement provided for late charges to be assessed against defendant for each time she was late picking up one of her children. Examination and comparison of the original agreement retained by the plaintiff and the copy provided the defendant reveals that plaintiff's original appears to have been altered with regard to the pickup time. In plaintiff's original, the pickup time was marked over to change it from 5:30 to 5:00, whereas the defendant's copy, which is devoid of markouts or mark-overs, indicates the pickup hour to be 5:30. The fact that the reason for the change to the original agreement was not satisfactorily explained weights heavily with the court.
The assessment of late charges against the defendant based on the pickup hour of 5:00 p.m. and including a 15 minute grace period, as provided for in their agreement, totals $890.00. In support of her claim and based on the altered agreement, plaintiff asserts records itemizing the number of times defendant was late picking up each of her children.
Further, both plaintiff and her husband testified that defendant was aware of and recognized this debt which was discussed with her on a number of occasions. Not to be outdone, defendant, her husband and her employer testified that defendant's husband, during a period of CT Page 12991 unemployment and on several other occasions, was charged with picking up the children and was never late. The testimony also provided that when defendant picked up her children, she seldom left work after the hour of 5:00 p.m. and that therefore was rarely late picking up her children, i.e. after 5:45 p.m. (The 5:30 pickup hour spelled out in her copy of the agreement plus the 15 minute grace period).
While plaintiff's records purporting to detail the late charges she claims are owed her by the defendant, and the original agreement she introduced into evidence are both suspect as they relate to the assessment of those late charges, it is clear from the testimony of the defendant and her employer that the defendant was late picking up some, if not all, of her children on at least one, if not more than one occasion. Certainly as a pre requisite to an accurate and therefore compensable determination of late charges, the number of times defendant was late, i.e. after 5:45 p.m., and the number of her children that she picked up late must be known, however, plaintiff has failed to prove either of these missing elements by a preponderance of credible evidence. Since it is plaintiff's burden to prove her claim for late charges by a fair preponderance of the evidence and since she has failed in that proof, her claim must also fail.
In addition to her claim for late charges, plaintiff maintains that defendant owes her as co-pay, the sum of $4,714.94 for day care services provided defendant's five children from September 1, 1997 through several weeks in June 1998. In support of her claim, plaintiff has introduced records itemizing the weekly co-pay for each child. The amount of co-pay is the difference between the amount charged by the plaintiff for providing day-care services to each child, less the amount paid for those services by CCAP.
The defendant denies ever agreeing to any such co-pay. Interestingly, defendant persists in her denial even though parent co-pay is part of the Child Care Assistance Program, is referred to in their monthly statements and, even though defendant made an eighty dollar payment towards same in April of 1998, although she claims it was requested by the plaintiff as a payment for food services that were never provided the children, and not as co-pay. Further, the term co-pay is also included in her agreement with the plaintiff although defendant presents a copy of the agreement with the term deleted therefrom.
Defendant also maintains that plaintiff falsified the number of hours she provided day care services to defendant's children thereby obtaining considerable overpayment from CCAP and consequently, is not entitled to a co-pay. CT Page 12992
If this claim were true then, at the very best, defendant had an obligation to immediately notify the program administrator which she did not do. Pursuant to her agreement with CCAP, defendant had an affirmative duty to report any changes in the hours her children were provided day care. Defendant's testimony indicating that until most recently she was unaware of these alleged overpayments is not credible.
While the court does not find the alleged overpayments proved by a fair preponderance of the evidence, it does find that defendant owes the following as co-pay. These amounts were determined by reducing plaintiff's claimed totals by all of her co-pay charges for the months prior to January, 1998 and her charges for the month of June 1998. As to the reason for the former reductions, plaintiff neither expected nor was aware of the possibility of receiving co-pay for these months and the agreement, such as it is, with the defendant, was not entered into until January 1998. As to the latter reduction, plaintiff discharged three of plaintiff's children from her care in May 1998, and refused to honor defendant's letter providing the contractually required two week notice as to defendant's other two children and therefore is not entitled to a co-pay for June 1998. Further, the co-pay from Autumn Mucci was reduced by the $80.00 payment made by the defendant in April 1998, since it does not appear that defendant received credit for it.
The figures below, in the left hand column indicate the amount sought by plaintiff as co-pay, while the figures on the right indicate the sums allowed as due and owing from the plaintiff.
Sought by Plaintiff Allowed by the Court
 Autumn $1,908.10 $ 921.35 Vincent 1,619.30 622.95 Heaven 867.68 378.88 Brandon 319.86 144.10 Noel 0 0 --------- --------- Total found due owing $2,067.28 by Defendant as co-pay
With regard to defendant's cross complaint, the court finds that the defendant has failed in her proof and therefore finds the issues for the plaintiff.
In accord with the foregoing, the court enters judgment for the plaintiff on both her complaint and the defendant's cross complaint and further adjudges that plaintiff recover of the defendant $2,067.28 damages together with statutory costs of suit. CT Page 12993
THOMAS G. WEST, J.